FILED

December 19 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0345

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 296N

MATTHEW D. SUMMERS and
BONNIE MAE SUMMERS,

        Plaintiffs and Appellees,

  v.

LEE C. COOK and BRENDA COOK,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and For the County of Daniels, Cause No. DV-10-2011-9
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Austin M. Knudsen, Loren J. O'Toole, II, O'Toole Law Firm,
Plentywood, Montana

        For Appellees:

                John E. Bloomquist, James E. Brown, Jacqueline R. Papez, Doney
Crowley Payne Bloomquist PC, Helena, Montana

Submitted on Briefs:  November 7, 2012
Decided:  December 19, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Lee C. Cook and Brenda Cook (Cooks) appeal from the Judgment entered by the District Court on April 11, 2012, declaring that Matthew D. Summers and Bonnie Mae Summers (Summers) have a private prescriptive easement, and that the public has a prescriptive easement, to use a road crossing Summers' property "for all historic lawful travel purposes."

¶3     The parties are neighboring property owners in Daniels County, about two miles east of Flaxville, and are relatives in that Bonnie Mae Summers is the mother of Matthew Summers and the aunt of Lee Cook. The Cooks reside on the north side of Montana Highway 5, and the Summers reside on the south side. The road in question was essentially destroyed or made impassible by Lee Cook during the course of the parties' dispute, but is known as Summers Road. Summers Road runs for approximately one-quarter mile over property owned by Cooks immediately south of State Highway 5, adjacent to property owned by Summers, and in an area roughly between the parties' residences. Summers Road connects State Highway 5 and County Road S-22, and the parties have used the road over many years.

¶4     According to the District Court's findings, Lee Cook sent a letter to Summers dated July 23, 1998, demanding that Summers cease driving across the Cooks' property, which he testified at trial was meant to include Summers Road. Cook erected "no trespassing" signs at that time, but Summers and "everyone else" continued to use the road until September 2008, "when Lee

Cook physically destroyed and removed the road with a front end loader." Until then, "Summers [R]oad carried all of the Summers traffic." Summers were thereafter forced to use another, poorly conditioned road. Summers initiated this action for a declaration of a private and public prescriptive easement over Summers Road.

¶5 A trial was conducted before the District Court on the issue of "when the use of Summers [R]oad ceased being permissive and became adverse and hostile." After trial, the District Court determined that the use of the road was adverse and hostile beginning in 1998, when permission, if any, was revoked by Cooks, and such adverse and hostile use continued until the road's destruction in 2008. The District Court declared an easement in favor of Summers and the public, and ordered Cooks to either pay for restoration of the road in the amount of $17,500.00, or alternatively to reconstruct the road to the condition it was in prior to its destruction.

¶6 On appeal, Cooks assert that Summers failed to satisfy the "open and notorious" and "adversity" elements of prescriptive easement. They argue the evidence supports a conclusion that Summers' use of the road was merely permissive by neighborly accommodation or courtesy. "We review the factual findings of a trial court sitting without a jury to determine whether the findings are clearly erroneous." *Larsen v. Richardson*, 2011 MT 195, ¶ 25, 361 Mont. 344, 260 P.3d 103 (citation omitted). "[W]e review a trial court's conclusions of law de novo, to determine whether the court's interpretation of the law is correct." *Larsen*, ¶ 25 (citation omitted).

¶7 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

3

¶8     Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS